UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

JAMES WORTH BAXTER,

          Debtor.

Case No. A04-01154-DMD
Chapter 11

**Filed On 3/15/06**

**MEMORANDUM REGARDING OBJECTION TO CLAIM**
**[The CIT Group/Equipment Financing, Inc.]**

James Baxter is an excavating contractor. He purchased a new 1999 Volvo 120C loader on August 11, 1999. The Volvo had optional accessories, including an air-conditioned cab, radial tires, and ride control. The purchase price was approximately $185,000.00. Baxter financed the loader through CIT. He signed a security agreement with CIT that listed his contact address as 1401 West 33rd in Anchorage. The security agreement had a paragraph dealing with disposition of collateral. It provided, in part:

> Secured Party may sell or lease the Collateral at a time and location of its choosing provided that the Secured Party acts in good faith and in a commercially reasonable manner. Secured Party will give Debtor reasonable notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition of the Collateral is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Debtor shown herein at least ten days before the time of the sale or disposition.[1]

---

[1] *See* ¶ 4, p. 3 of the security agreement [included as part of Debtor's Ex. 1].

Sometime after purchase of the loader, Baxter moved his business to a new address, a gravel pit located at 4690 East Parks Highway in Wasilla. On March 25, 2002, Kim Swanson, Baxter's bookkeeper/office manager wrote to CIT using the Parks Highway address in Wasilla. Baxter claims he moved from the 4690 East Parks Highway location to yet another address no later than August 1, 2002.

Baxter defaulted on his loan with CIT. CIT sued him in state court for return of the loader and other relief. A default judgment was issued in favor of CIT on November 18, 2002. CIT repossessed the loader the following year, in May of 2003, and barged it to Seattle. From there, the loader was transported to Bothell, Washington, where it stayed until it was sold in early 2004.

On June 3, 2003, CIT sent Baxter a form entitled "Notification of Disposition of Collateral." The form stated, "We will sell the Volvo L120C S/N: V14180 privately sometime after June 17, 2003." It was sent only to the 4690 East Parks Highway address in Wasilla, via regular and certified mail. The notice sent by certified mail was returned unclaimed to CIT. Roughly seven months later, the David Steed Company sold the loader for $72,000.00. The sale closed on January 6, 2004. CIT paid a 10% commission on the sale and also incurred freight and other incidental charges associated with the loader's repossession and sale. Net from the sale of the loader, after deduction of the commission and other expenses, was $56,158.67. CIT seeks to recover a deficiency of $111,026.61, as reflected on its Proof of Claim No. 18.

The debtor objects to CIT's deficiency claim on several grounds, the first being lack of notice. AS 45.29.611(b) requires secured creditors to send debtors notification before disposition of their collateral. Baxter argues that CIT's notice of the disposition of the loader was inadequate because it was not sent to his new address or the Anchorage address originally listed on the security agreement. I disagree.

>AS 45.01.201(27) provides:
>
>(27)  a person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it; a person "receives" a notice or notification when
>
>(A)  it comes to the person's attention; or
>
>(B)  it is duly delivered at the place of business through which the contract was made or at any other place held out by the person as the place for receipt of the communications.

The debtor, through his correspondence with CIT, held out 4690 East Parks Highway in Wasilla as his place for receipt of communications. CIT cannot be faulted for sending notice to that address. I find CIT's notice was reasonable under the circumstances.

The debtor has also placed CIT's compliance with the Uniform Commercial Code ("UCC"), in disposing of the loader, in issue. When a secured party's compliance is at issue, "the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in compliance with the provisions of AS 45.29.601

3

– 45.29.628."[2] "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."[3] Here, I find that CIT's practices relative to its disposition of the loader were not commercially reasonable.

CIT made no attempt to liquidate the equipment in a timely manner in the most obvious market for the collateral: Alaska. The loader was in good condition and there was a ready market for this type of equipment in Alaska. The debtor produced two expert witnesses, each of whom acknowledged the desirability of the Volvo loader in Alaska. These loaders are used exclusively on the North Slope by BP and other oil producers. Alaska also has hundreds of millions of dollars in annual government-funded construction projects, and loaders are used on these projects. The experts felt that the loader could have sold in Alaska within six to eight months for approximately $115,000.00, and that it would bring $105,000.00 to $110,000.00 in a quick sale.

CIT made no attempt to sell the loader while it was in Alaska, instead shipping it "Outside" to a saturated market. Significant expenses were incurred to ship the loader to the Lower 48 and, when CIT ultimately advertised the loader for sale, there were 22 similar loaders on the market in the continental United States. No comparable loaders were offered for sale in Alaska. This was a major error on CIT's part, and it had no real business rationale to explain its actions. The company line was simply that CIT had no contract with an equipment company in Alaska for storage or sale of the loader. But this was not an

---

[2] AS 45.29.626(a)(2).

[3] AS 45.29.610(b).

4

insurmountable dilemma. CIT could easily have consigned the loader at one of Anchorage's construction yards or with an independent broker, such as Pacific Machinery and Terry Shurtleff. Instead, CIT incurred inordinate time and expense shipping the loader from Alaska to Washington and storing it there. Net proceeds from the sale, which occurred more than a year after CIT obtained the judgment for repossession, were less than half of the loader's value. Disposition of the collateral in this manner was not commercially reasonable.

The fact that a higher price may have been obtained if a secured party had liquidated collateral in a different manner is not, by itself, conclusive on the issue of whether that collateral was disposed of in a commercially reasonable manner.[4] But "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable."[5] My conclusion here is not based solely on the price CIT ultimately received for the loader, even though CIT received only $72,000.00 for a loader with a fair market value of $115,000.00. Nor am I basing my conclusion on the fact that the sale of the loader occurred nearly 14 months after CIT had obtained the judgment authorizing repossession. Rather, I am basing my conclusion on CIT's bureaucratic decision to ship the loader out of state before attempting to sell it. This decision was commercially

---

[4]AS 45.29.627(a) provides:

    (a)    The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner."

[5]U.C.C. § 9-627 cmt. 2 (1998).

5

Document      Page 6 of 8

unreasonable. It had no business justification and ignored the viable market for the loader in Alaska. CIT's deficiency claim is inflated due to this error in judgment and must be adjusted in accordance with AS 45.29.626(a)(3) and (4), which provide:

> (3) except as otherwise provided in AS 45.29.628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in compliance with the provisions of AS 45.29.601 – 45.29.628 relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney fees exceeds the greater of
>
> (A) the proceeds of the collection, enforcement, disposition, or acceptance; or
>
> (B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in compliance with the provisions of AS 45.29.601 – 45.29.628 relating to collection, enforcement, disposition, or acceptance;
>
> (4) for purposes of (3)(B) of this subsection, the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney fees unless the secured party proves that the amount is less than that sum.

In accordance with these provisions, I make the following findings. The debt, as of the date of the default judgment, November 12, 2002, was $156,048.40 including interest and attorney's fees. If CIT had acted diligently, by quickly repossessing and then selling the loader in Alaska after entry of this judgment, it would have received at least $105,000.00 for the sale no later than July 1st of 2003, and avoided substantial sale costs.

6

Assuming the loader had sold in Anchorage on July 1, 2003, for a price of $105,000.00, CIT's deficiency claim is calculated as follows:

| | |
|---|---:|
| Principal amount of CIT's Judgment: | $156,048.40 |
| Postjudgment interest 11/18/2002- 7/1/2003 | 4,070.08 |
| **Total judgment as of July 1, 2003** | **$160,118.48** |
| Collateral proceeds: | $105,000.00 |
| Costs of sale[6] | (12,511.58) |
| **Net proceeds after costs:** | **$92,488.42** |
| Judgment as of July 1, 2003: | $160,118.48 |
| Less Net after Sale: | (92,488.42) |
| **Balance after collateral sale:** | **$ 67,630.06** |
| Interest on balance @ 4.25% from 7/01/03 to date petition filed on 10/21/04 (477 days @ $7.87 per day) | $3,753.99 |
| Balance as of Petition Date | **$ 71,384.05** |

In accordance with AS 45.29.626(a)(3)(B), CIT's unsecured claim is allowed in the sum of $71,384.05. An order and judgment will be entered consistent with this memorandum.

---

[6]Calculated as follows: commission, advertising and holding expenses ($10,500), repossession fee ($1,350), keys ($52.08), and transport of loader to Anchorage from Wasilla ($609.50).

7

DATED: March 15, 2006.

                                  BY THE COURT

                                  /s/ Donald MacDonald IV
                                  DONALD MacDONALD IV
                                  United States Bankruptcy Judge

Serve: E. LeRoy, Esq.
       F. Odsen, Esq.
       U. S. Trustee
       Claims Register
          3/15/06